Filed 7/5/18

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| BARRY S. JAMESON, | ) | |
| | ) | |
| Plaintiff and Appellant, | ) | |
| | ) | S230899 |
| v. | ) | |
| | ) | Ct.App. 4/1 D066793 |
| TADDESE DESTA, | ) | |
| | ) | San Diego County |
| Defendant and Respondent. | ) | Super. Ct. No. GIS9465 |
| _____ | ) | |

Under California's in forma pauperis doctrine and Government Code section 68086, subdivision (b),[1] a person who because of limited financial resources qualifies for a waiver of initial court filing fees is entitled, as well, to a waiver of fees for the attendance of an official court reporter at a hearing or trial. In this case, however, although plaintiff Barry Jameson (hereafter plaintiff) was entitled to a waiver of official court reporter attendance fees, plaintiff was not provided the opportunity to have a court reporter at his civil trial because the San Diego Superior Court, in response to a significant reduction of its judicial budget, had adopted a policy under which the court did not make official court reporters available at most civil trials even for persons who qualified for a fee waiver.

---

[1] Unless otherwise specified, statutory references are to the Government Code. For convenience, section 68086, subdivision (b) shall hereafter be referred to as section 68086(b).

1

Instead, the applicable superior court policy provided that a court reporter would be present in civil actions to record the trial proceedings only if a private court reporter was hired and paid for by a party or the parties to the litigation.[2]

In the present case, plaintiff could not afford to pay for a private court reporter and defendant Taddese Desta chose not to hire or pay for a private court reporter. The trial court entered a nonsuit against the plaintiff after plaintiff's opening statement to the jury and plaintiff appealed from the judgment. Because no court reporter was present at plaintiff's trial, no reporter's transcript of the trial

---

[2]    A number of other states have addressed the significant financial cost associated with the use of court reporters by authorizing courts to utilize electronic recording as a means of generating an officially recognized verbatim record of trial court proceedings that can be relied upon on appeal. (See Nat. Center for State Courts, Making the Record: Utilizing Digital Electronic Recording (Sept. 2013) pp. 7-8 [listing states].) In California, however, current legislation restricts the use of electronic recording to generate an official certified verbatim record of trial court proceedings, as an alternative to a court reporter, to limited civil actions (those involving claims under $25,000 (Code Civ. Proc., § 85)) and criminal proceedings involving misdemeanors or infractions. (See § 69957, subd. (a); see also Code Civ. Proc. § 273, subd. (c).)

A 2017 report of the Commission on the Future of California's Court System (Futures Commission) contains an informative discussion of recent technological advances in digital recording of court proceedings and of the considerable potential benefits, both economic and otherwise, of such technology for parties, courts, and the judicial system as a whole. (See Futures Com., Report to the Chief Justice (2017) pp. 238-251 (2017 Futures Commission Report) <http://www.courts.ca.gov/documents/futures-commission-final-report.pdf> [as of July 5, 2018].) The report specifically recommends "[i]mplementing a pilot program to use comprehensive digital recording to create the official record for all cases that do not currently require a record prepared by a stenographic court reporter." (*Id.* at p. 216.) In view of the restriction imposed by current legislation, however, legislative authorization is required to proceed with this recommendation. (*Id.* at p. 250.)

All internet citations in this opinion are archived by year, docket number, and case name at <http://www.courts.ca.gov/38324.htm>.

was available or prepared. As a consequence, the Court of Appeal rejected plaintiff's appeal without reaching the merits of plaintiff's legal challenge to the nonsuit on the ground that plaintiff's legal contentions could not be pursued on appeal in the absence of a reporter's transcript.

We granted plaintiff's petition for review to determine the validity of the superior court's policy of not providing official court reporters in most civil trials even for litigants who are entitled to a waiver of official court reporter fees and permitting a court reporter to record court proceedings only if a private court reporter is obtained and paid for by one or more parties to the litigation.

For the reasons discussed below, we conclude that, as applied to in forma pauperis litigants who are entitled to a waiver of official court reporter fees, the San Diego Superior Court's general policy of not providing official court reporters in most civil trials while permitting privately retained court reporters for parties who can afford to pay for such reporters is inconsistent with the general teaching of prior California in forma pauperis judicial decisions and the public policy of facilitating equal access to the courts embodied in section 68630, subdivision (a). By precluding an indigent litigant from obtaining the attendance of an official court reporter (to which the litigant would be entitled without payment of a fee), while at the same time preserving the right of financially able litigants to obtain an officially recognized pro tempore court reporter, the challenged court policy creates the type of restriction of meaningful access to the civil judicial process that the relevant California in forma pauperis precedents and legislative policy render impermissible. Accordingly, we conclude that the court policy in question is invalid as applied to plaintiff and other fee waiver recipients, and that an official court reporter, or other valid means to create an official verbatim record for purposes of appeal, must generally be made available to in forma pauperis litigants upon request.

3

## I. FACTS AND PROCEEDINGS BELOW

In April 2002, plaintiff filed this lawsuit against Dr. Taddese Desta (hereafter defendant), a doctor employed by the California Department of Corrections (now the Department of Corrections and Rehabilitation) who had treated plaintiff while plaintiff was incarcerated at the Richard J. Donovan Correctional Facility in San Diego County. The complaint alleged that during his incarceration plaintiff was diagnosed with hepatitis and that in treating plaintiff for that disease defendant negligently prescribed, and plaintiff took, the drug interferon for a 12-month period, a course of medication that allegedly caused plaintiff to suffer a variety of physical injuries, including irreversible damage to his eyesight. The complaint alleged that defendant was liable for plaintiff's injuries under a variety of causes of action, including causes of action for professional negligence and breach of fiduciary duty (failure to obtain plaintiff's informed consent).

Over the ensuing decade, on three separate occasions, the trial court entered judgment in favor of defendant and dismissed plaintiff's action prior to trial. Each time the Court of Appeal reversed the trial court judgment and remanded the matter to the trial court for further proceedings. (See *Jameson v. Desta* (July 2, 2007, D047824) opn. mod. July 26, 2007 [nonpub. opn.] (*Jameson I*); *Jameson v. Desta* (2009) 179 Cal.App.4th 672 (*Jameson II*); *Jameson v. Desta* (2013) 215 Cal.App.4th 1144 (*Jameson III*).)[3]

---

[3] In *Jameson I*, the Court of Appeal concluded that the trial court had erred in dismissing the action for lack of diligent service on defendant when defendant had earlier signed a notice and acknowledgement of service by mail.

In *Jameson II*, the Court of Appeal concluded that the trial court had erred in dismissing the action on the basis of plaintiff's failure to appear telephonically at two court proceedings when the trial court, although aware of plaintiff's repeated complaints that prison personnel were not allowing him to communicate

After the third remand from the Court of Appeal, the trial court eventually set the case for trial. Plaintiff is indigent, is representing himself, and qualified for an initial fee waiver under section 68631. Section 68086 — the general provision governing official court reporter attendance fees — provides in subdivision (b) that "[t]he fee shall be waived for a person who has been granted a fee waiver under Section 68631." It is undisputed that if an official court reporter had been made available for the trial in this matter, plaintiff would have been entitled to the court reporter's attendance upon request without payment of any fee.

According to the minute order of a hearing held 10 days before the jury trial commenced, however, the trial court orally informed the parties at that hearing that "the Court no longer provides a court reporter for civil trials, and that parties have to provide their own reporters for trial." There is no indication in the minute order that the trial court, although presumably aware of plaintiff's fee waiver status, inquired whether plaintiff wanted to have the proceedings recorded or could afford to pay for a private certified shorthand reporter to serve as an official pro

telephonically with the court, made no inquiry into plaintiff's complaints and the record did not indicate that plaintiff's failure to appear telephonically was willful. (*Jameson II*, *supra*, 179 Cal.App.4th at pp. 682-684.)

In *Jameson III*, the Court of Appeal concluded that the trial court had erred in granting summary judgment in favor of defendant on plaintiff's professional negligence and breach of fiduciary duty causes of action, pointing (1) to a declaration of a medical doctor presented by plaintiff that supported plaintiff's malpractice claim, and (2) to defendant's failure to address plaintiff's claim of lack of informed consent. (*Jameson III*, *supra*, 215 Cal.App.4th at pp. 1164-1174.) In addition, the *Jameson III* court concluded that the trial court had erred in permitting defendant's attorney to take a deposition of plaintiff's medical expert without affording plaintiff the opportunity to participate in the deposition. (*Id.* at pp. 1174-1176.) The Court of Appeal concluded: "On remand, the trial court is again directed to ensure that Jameson's right to prosecute this action is protected." (*Id.* at 1176.)

tempore reporter as authorized by the governing statute and rule. (§ 68086, subd. (d)(2); Cal. Rules of Court, rule 2.956(c).)[4]

Neither party provided a private certified shorthand reporter and the trial proceeded on April 28, 2014 without a court reporter. Thus, no verbatim record of the trial was made. According to a subsequent order filed by the court, plaintiff appeared at trial in pro per by telephone and defendant appeared in person accompanied by his attorney, and "a jury of twelve persons was regularly impaneled and sworn." The order further indicates that after the conclusion of opening statements by both parties, two motions filed by defendant — (1) a motion for nonsuit pursuant to Code of Civil Procedure section 581c[5] and (2) a motion to dismiss for failing to bring the action to trial within five years after commencement under Code of Civil Procedure section 583.310 — "were heard and argued." The order states: "After consideration of the moving papers and after hearing arguments by Plaintiff and defense counsel, the Court ruled as follows: [¶] 1. After hearing Plaintiff's opening statement, Defendant's nonsuit is granted

---

**4** Rule 2.956(b)(3) of the California Rules of Court provides that unless a trial court's policy is to have an official court reporter normally available for civil trial in all courtrooms, "the court must require that each party file a statement before the trial date indicating whether the party requests the presence of an official court reporter." The record before us does not indicate that the trial court required each party to file such a statement before the trial in this case or otherwise inquired whether plaintiff desired the presence of an official court reporter.

Unless otherwise specified, further references to rules are to rules of the California Rules of Court.

**5** Code of Civil Procedure section 581c, subdivision (a) provides: "Only after, and not before, the plaintiff has completed his or her opening statement, or after the presentation of his or her evidence in a trial by jury, the defendant, without waiving his or her right to offer evidence in the event the motion is not granted, may move for a judgment of nonsuit."

6

because Plaintiff will not be able to produce admissible expert opinion testimony on causation and damages. [¶] 2. In the alternative, Defendant's Motion to Dismiss is granted because Plaintiff did not bring this action to trial within the five years after the action commenced." Thereafter, the trial court entered judgment in favor of defendant.[6]

On appeal, the Court of Appeal affirmed the trial court judgment. The Court of Appeal concluded that it need not determine whether the trial court properly dismissed the action under Code of Civil Procedure section 583.310 for failure to bring the case to trial within five years, because it concluded that in any event the judgment must be upheld on the basis of the trial court's grant of defendant's motion for nonsuit under Code of Civil Procedure section 581c. With regard to plaintiff's appeal of the trial court's ruling on the motion for nonsuit based on plaintiff's opening statement at trial, the Court of Appeal concluded that plaintiff is precluded from obtaining a reversal of the trial court's nonsuit ruling because the record on appeal does not contain a reporter's transcript. Although the Court of Appeal acknowledged that plaintiff had raised a number of legal arguments in support of his contention that the trial court had erred in granting a

---

[6]     Defendant's motion for nonsuit based on plaintiff's opening statement was made orally at trial. The minute order of the trial proceedings indicates that the court's ruling was based on its conclusion that plaintiff's opening statement demonstrated that plaintiff would not be able to establish the requisite causation between the medical treatment provided by defendant and plaintiff's alleged damages, in part because plaintiff did not have a medical expert who would testify at trial.

Defendant's motion for dismissal for failure to bring the matter to trial within five years was filed approximately a week before trial and was set forth in a written document; the trial court initially took that motion under submission, and ultimately ruled on that motion, along with defendant's subsequent oral motion for nonsuit, after the parties presented their opening statements.

7

nonsuit on the basis of plaintiff's opening statement to the jury, the Court of Appeal found that "none of these contentions is cognizable in the absence of a reporter's transcript."

Plaintiff argued in the Court of Appeal that the absence of a reporter's transcript was not a proper ground for upholding the trial court judgment. Plaintiff maintained that in view of his entitlement to a fee waiver of official court reporter fees under section 68086(b), the trial court had erred in failing to make available to plaintiff an official court reporter for the trial proceedings, which inevitably precluded the preparation of a reporter's transcript. Plaintiff argued that the judgment should be reversed and the case remanded to the trial court for a trial at which an official court reporter would be made available to him upon request.

The Court of Appeal rejected plaintiff's argument, relying on a separate subdivision of section 68086 — subdivision (d)(2) — providing that "if an official court reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter," with the costs of the reporter recoverable as taxable costs by the prevailing party. The Court of Appeal relied as well on language in a court rule stating that it is a "party's responsibility to pay the reporter's fee" when an official court reporter is not provided by the court. (Rule 2.956(c).) In addition, the Court of Appeal noted that the local court policy that had been adopted by the San Diego Superior Court provided explicitly that "[o]fficial court reporters are not normally available in civil . . . matters" and that "[p]arties, *including those with fee waivers*, are responsible for all fees and costs related to court reporter services" when an official court reporter is not provided by the court. (Italics added, boldface omitted.) (San Diego Super. Ct., Policy Regarding Normal Availability and Unavailability of Official Court Reporters (Pol. No. SDSC ADM-317) (S.D.

8

Reporter Availability Policy) <http://www.sdcourt.ca.gov/pls/portal/docs/PAGE/ SDCOURT/GENERALINFORMATION/FORMS/ADMINFORMS/ADM317. PDF> [as of July 5, 2018].)

The Court of Appeal concluded that under the applicable statute, rule of court, and superior court policy, the trial court had not erred in failing to make an official court reporter available at trial, notwithstanding the fact that plaintiff was entitled to a fee waiver and did not have the financial ability to pay for a private court reporter. The court ruled that section 68086(b) "does not mandate that a trial court provide indigent litigants with court reporter services where no official court reporter is provided by the court, as was true in this case."[7]

Plaintiff sought review in this court and we granted review to consider whether the superior court's policy of not providing an official court reporter in a civil case even when a party to the action has qualified for a fee waiver, while permitting a party who can afford to hire a private court reporter to do so, is consistent with past California decisions and statutes recognizing the importance of ensuring access to justice to all persons regardless of their economic circumstances.

---

[7] The Court of Appeal was not oblivious to the hardship posed by its ruling in light of plaintiff's indigency. The Court of Appeal noted that it was "fully aware that Jameson's incarceration and his financial circumstances have made it difficult for him to pursue his claims in court. This case aptly demonstrates that civil justice is not free. While this court is sympathetic to the plight of litigants like Jameson whose incarceration and/or financial circumstances present such challenges, the rules of appellate procedure and substantive law mandate that we affirm the judgment in this case."

## II. Is the San Diego Superior Court's Policy of Not Making an Official Court Reporter Available in Most Civil Trials, and Permitting a Private Court Reporter to Record the Proceedings Only If a Party Pays for Such a Reporter, Valid As Applied to a Litigant Who is Entitled to a Fee Waiver of Official Court Reporter Fees?

### A. Background of California Decisions Regarding In Forma Pauperis Litigants

More than a hundred years ago, this court, in the seminal decision of *Martin v. Superior Court* (1917) 176 Cal. 289 (*Martin*), held that under the common law California courts have the inherent power to permit an indigent person to litigate a civil case in forma pauperis and thereby to bring a civil action without paying the ordinary, statutorily required filing fees. (*Id.* at pp. 293-296.) In response to the suggestion that the Legislature had curtailed that power by enacting statutory provisions generally imposing court fees covering various court services, the court in *Martin* stated: "Quite aside from the question as to the power of the [L]egislature to do this thing, it is obvious that only the plainest declaration of legislative intent would be construed as even an effort to do this thing. We find no expressed intent. All of the statutes dealing with the payment and prepayment of fees . . . are general in their nature and have to do with the orderly collection and disposition of the fees. . . . Neither individually nor collectively are they even susceptible of the construction that the design of the [L]egislature was to deny to the courts the exercise of their most just and most necessary inherent power. They have applicability to all cases where the court has not, in the exercise of that power, remitted the payment of the fees on behalf of a poor suitor, and in every instance the court's order to this effect is sufficient warrant to every officer charged with the collection of fees to omit the performance of that duty in the specified case." (*Id.* at p. 297.)

10

Furthermore, the court in *Martin* rejected the contention that the trial court's refusal in that case to permit the indigent plaintiff to obtain a jury without the payment of jury fees could be defended on the ground that the trial court's action did not leave the plaintiff remediless "but left open to him the trial of his cause without a jury." (*Martin*, *supra*, 176 Cal. at p. 297.) The court responded: "Little need be said to show the inadequacy of such a response. Where the suitor was allowed to prosecute *in forma pauperis*, all the rights which were open to him upon the payment of fees were open to him by virtue of the order, and every officer was required to perform his duty without the payment of fees as fully as though the legal fees had been paid. . . . Therefore we will not say that a suitor who . . . cannot pay court fees must be content to go to trial without a jury. The law does not say this, and we will not read such a declaration into the law." (*Id.* at pp. 297-298.)

Following the general principles set forth in *Martin*, this court and the Courts of Appeal have afforded indigent civil litigants the ability to obtain meaningful access to the judicial process in a great variety of contexts. (See, e.g., *Majors v. Superior Court* (1919) 181 Cal. 270 [right of civil indigent litigant to obtain jury on retrial without prepayment of jury fees]; *Isrin v. Superior Court* (1965) 63 Cal.2d 153 (*Isrin*) [indigent civil plaintiff could not be denied in forma pauperis status because represented by counsel on contingent fee basis]; *Ferguson v. Keays* (1971) 4 Cal.3d 649 (*Ferguson*) [right of indigent civil litigant to file appeal without payment of appeal fees]; *Earls v. Superior Court* (1971) 6 Cal.3d 109 (*Earls*) [indigent civil litigant may not be denied in forma pauperis status on the ground that litigant may be able to afford fees through savings over several months]; *Conover v. Hall* (1974) 11 Cal.3d 842 (*Conover*) [right of indigent civil litigant to obtain injunction without providing an injunction bond]; *Payne v. Superior Court* (1976) 17 Cal.3d 908 (*Payne*) [right of indigent prisoner who is a

11

defendant in a civil case to be provided meaningful access to judicial process, including representation by counsel if necessary]; *Yarbrough v. Superior Court* (1985) 39 Cal.3d 197 [explaining trial court's responsibilities under *Payne*]; *County of Sutter v. Superior Court* (1966) 244 Cal.App.2d 770 (*County of Sutter*) [right of indigent civil litigant to obtain waiver of bond requirement imposed by Gov. Code, § 947]; *Bank of America v. Superior Court* (1967) 255 Cal.App.2d 575 (*Bank of America*) [right of indigent out-of-state civil litigant to obtain waiver of security for costs required by Code Civ. Proc., § 1030]; *Roberts v. Superior Court* (1968) 264 Cal.App.2d 235 (*Roberts*) [right of indigent civil litigant to obtain waiver of appeal bond required by Code Civ. Proc., § 985.5]; *Cohen v. Board of Supervisors* (1971) 20 Cal.App.3d 236 (*Cohen*) [right of indigent civil plaintiff who could not afford service by statutorily prescribed publication to utilize alternative reasonable method of service]; *Solorzano v. Superior Court* (1993) 18 Cal.App.4th 603 (*Solorzano*) [trial court abused its discretion in appointing a privately compensated discovery referee that indigent plaintiffs could not afford]; *Baltayan v. Estate of Getemyan* (2001) 90 Cal.App.4th 1427, 1436-1443 (conc. opn. of Johnson, J.) (*Baltayan*) [right of indigent out-of-state civil plaintiff to exemption from security undertaking required by Code Civ. Proc. § 1030]; *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87 (*Roldan*) [trial court may not consign indigent plaintiffs to an arbitration process they cannot afford to pursue].)

The general teaching of this long line of decisions is that California courts, pursuant to the principles of the in forma pauperis doctrine, have the inherent discretion to facilitate an indigent civil litigant's equal access to the judicial process even when the relevant statutory provisions that impose fees or other expenses do not themselves contain an exception for needy litigants.

Moreover, this line of cases also demonstrates that the exercise of judicial discretion in furtherance of facilitating equal access to justice is not limited to

12

excusing the payment of fees that the government charges for government-provided services. Judicial authority to facilitate meaningful access to indigent litigants extends as well to excusing statutorily imposed expenses that are intended to protect third parties (e.g., injunction or damage bonds) and to devising alternative procedures (e.g., additional methods of service or meaningful access) so that indigent litigants are not, as a practical matter, denied their day in court. (See *Conover*, *supra*, 11 Cal.3d 842; *County of Sutter*, *supra*, 244 Cal.App.2d 770; *Bank of America*, *supra*, 255 Cal.App.2d 575; *Roberts*, *supra*, 264 Cal.App.2d 235; *Cohen*, *supra*, 20 Cal.App.3d 236; *Baltayan*, *supra*, 90 Cal.App.4th 1427; *Payne*, *supra*, 17 Cal.3d 908.)

Finally, these cases demonstrate that the policy of affording indigent litigants meaningful access to the judicial process establishes restrictions not only upon potential barriers created by *legislatively* imposed fees or procedures, but also upon *court*-devised policies or practices that have the effect of denying to qualified indigent litigants the equal access to justice that the in forma pauperis doctrine was designed to provide. (See, e.g., *Isrin*, *supra*, 63 Cal.2d 153; *Earls*, *supra*, 6 Cal.3d 109; *Solorzano*, *supra*, 18 Cal.App.4th 603; *Roldan*, *supra*, 219 Cal.App.4th 87.)

### B. Legislative Enactments Relating to In Forma Pauperis Status and Initial Court Rules Regarding Official Court Reporter Fees

Although the authority of California courts to ameliorate financial barriers to access to justice faced by indigent litigants pursuant to the in forma pauperis doctrine was first recognized in judicial decisions, in 1979 the Legislature enacted a statute confirming this judicial authority and directing the Judicial Council to formulate uniform forms and rules of court to effectuate this authority. (Stats. 1979, ch. 850, § 1, pp. 2952-2953 [enacting former § 68511.3].)

13

Former section 68511.3 provided broadly that the rules adopted by the Judicial Council should permit "proceeding in forma pauperis at every stage of the proceedings at both the appellate and trial levels of the court system." The statute identified certain categories of litigants (e.g., recipients of specified welfare benefits) who were to be permitted to proceed in forma pauperis, and further directed that the rules to be adopted should recognize a court's authority to grant permission to proceed in forma pauperis "in any other instance in which, in its discretion, such permission is appropriate because the litigant is unable to proceed without using money which is necessary for the use of the litigant or the litigant's family to provide for the common necessaries of life." (*Ibid.*) Former section 68511.3 did not list the specific court fees that would be waived for in forma pauperis litigants, but provided that the Judicial Council should adopt uniform forms and rules in this regard.

The initial rules adopted by the Judicial Council pursuant to the statutory mandate of former section 68511.3 recognized that in forma pauperis litigants were entitled to the waiver, among other fees, of court reporter attendance fees. The initial rules, however, drew a distinction between the waiver of such fees for proceedings held within 60 days of the grant of fee waiver status and later proceedings. Former rule 3.61(7) provided that court reporter attendance fees "must" be waived for proceedings held within 60 days of the order granting the fee waiver application, whereas former rule 3.62(4) provided that such court reporter attendance fees "may" be waived for proceedings held more than 60 days after the date of the order granting the fee waiver application. The rules themselves provided no explanation for this distinction.

In 2008, former section 68511.3 was repealed and replaced by a series of statutory provisions beginning with section 68630. (Stats. 2008, ch. 462, § 2, pp. 3309-3320.) The 2008 legislation explicitly and forcefully confirms this

14

state's policy of providing equal access to justice to all persons regardless of their economic means.

Section 68630 provides in this regard: "The Legislature finds and declares all of the following: [¶] (a) That our legal system cannot provide 'equal justice under law' unless all persons have access to the courts without regard to their economic means. California law and court procedures should ensure that court fees are not a barrier to court access for those with insufficient economic means to pay those fees. [¶] (b) That fiscal responsibility should be tempered with concern for litigants' rights to access the judicial system. The procedure for allowing the poor to use court services without paying ordinary fees must be one that applies rules fairly to similarly situated persons, is accessible to those with limited knowledge of court processes, and does not delay access to court services. The procedure for determining if a litigant may file a lawsuit without paying a fee must not interfere with court access for those without the financial means to do so. [¶] (c) That those who are able to pay court fees should do so, and that courts should be allowed to recover previously waived fees if a litigant has obtained a judgment or substantial settlement."

Under the 2008 legislation, the Judicial Council retained the authority to adopt rules and forms relating to in forma pauperis status, including "[p]rescribing the court fees and costs that may be waived at every stage of the proceedings." (§ 68641.) Although the initial Rules of Court relating to the waiver of court reporter attendance fees — former rules 3.61(7) and 3.62(4) — were renumbered in 2009 as rules 3.55(7) and 3.56(4), the substance of the rules regarding court reporter attendance fees remained unchanged, retaining the distinction between proceedings held within 60 days of the order granting a fee waiver and proceedings held after 60 days.

15

In 2013, the Legislature amended section 68086, the specific statute relating to court reporter attendance fees. (Stats. 2013, ch. 454, § 1.)**8** As part of the 2013 amendment of section 68086, the Legislature added a new subdivision (b), which provides in full: "The fee shall be waived for a person who has been granted a fee waiver under Section 68631 [the general provision relating to an initial fee waiver]." Section 68086(b) draws no distinction regarding the entitlement to a fee waiver based upon the date upon which the hearing or trial occurs, nor places any other qualification on the applicability of the litigant's right to a waiver of court reporter attendance fees.**9**

## C. Importance of a Court Reporter Under Current California Law

Under current California law, in most civil proceedings the presence of a court reporter is required in order to obtain a verbatim record of trial court

---

**8** Section 68086 was initially enacted in 1992, following the adoption of state funding of California trial courts. (Stats. 1992, ch. 696, § 21, pp. 3009-3310.) As initially enacted, the statute imposed an official court reporter attendance fee of $100 per half day for each civil case lasting more than one day; at that time, no official court reporter fee was imposed for the first day. The statute also directed the Judicial Council to adopt rules requiring trial courts to notify parties of the unavailability of official court reporting services. As initially enacted, section 68086 did not address the waiver of court reporter attendance fees for in forma pauperis litigants.

Subsequent amendments of section 68086, prior to the 2013 amendment, extended the official court reporter attendance fee to any proceeding lasting more than one hour (Stats. 1993, ch. 70, § 2, pp. 1051-1052) and increased the fee to be imposed to "a fee equal to the actual cost of providing that service." (*Id.*, subd. (a)(1), as amended by Stats. 2003, ch. /159, § 14, p. 1668.)

**9** In addition to adding subdivision (b), explicitly providing for waiver of the court reporter attendance fee for fee waiver recipients, the 2013 amendment of section 68086 added provisions relating to the imposition of a $30 fee for each proceeding anticipated to last one hour or less, and retaining a fee equal to the actual cost of providing court reporter services for each proceeding lasting more than one hour. (§ 68086, subd. (a)(1), (2).)

16

proceedings and, ultimately, the preparation of an officially recognized reporter's transcript for use on appeal.**10**  The inclusion of court reporter fees in the original court rules setting forth the categories of costs and fees to which an economically needy litigant is entitled to a waiver, as well as the explicit legislative codification of such entitlement in section 68086(b) in 2013, reflect the realistic, crucial importance that the presence of a court reporter currently plays in the actual protection of a civil litigant's legal rights and in providing such a litigant equal access to appellate justice in California.

As the Court of Appeal decision in the present case aptly demonstrates, the absence of a court reporter at trial court proceedings and the resulting lack of a verbatim record of such proceedings will frequently be fatal to a litigant's ability to have his or her claims of trial court error resolved on the merits by an appellate court.  This is so because it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. (See, e.g., *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; see generally 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409 [citing cases].) "This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error." (*Ibid.*; see Cal. Const., art. VI, § 13.)

---

**10**     As already noted (*ante*, p. 2, fn. 2), section 69957 currently precludes California courts from utilizing electronic recording to generate an official certified verbatim record of trial court proceedings except in limited civil actions and criminal proceedings involving misdemeanors and infractions.  (§ 69957, subd. (a); see also *California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15; *California Court Reporters Assn. v. Judicial Council of California* (1997) 59 Cal.App.4th 959.)

"In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. '[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented.' " (*Bennett v. McCall* (1993) 19 Cal.App.4th 122, 127.) " 'A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of the trial court should be affirmed.' " (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) "Consequently, [the appellant] has the burden of providing an adequate record. [Citation.] Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]." (*Hernandez v. California Hospital Medical Center* (2000) 78 Cal.App.4th 498, 502.)[11]

In *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 186-187, the court extensively catalogued the frequency with which appellate courts have declined to reach the merits of a claim raised on appeal because of the absence of a reporter's transcript. The court in *Foust* stated: "In numerous situations, appellate courts have refused to reach the merits of an appellant's claims because no reporter's transcript of a pertinent proceeding or a suitable substitute was provided. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296 [attorney fee motion hearing]; *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574-575 (lead opn. of Grodin, J.) [new trial motion hearing]; *In re Kathy P.* (1979) 25 Cal.3d 91, 102 [hearing to determine whether counsel was waived and the minor

---

[11] As the appellate court in *Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364, quipped: "When practicing appellate law, there are at least three immutable rules: first, take great care to prepare a complete record; second, if it is not in the record, it did not happen; and third, when in doubt, refer back to rules one and two."

18

consented to informal adjudication]; *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447 [trial transcript when attorney fees sought]; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992 [surcharge hearing]; *Hodges v. Mark* (1996) 49 Cal.App.4th 651, 657 [nonsuit motion where trial transcript not provided]; *Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532 [reporter's transcript fails to reflect content of special instructions]; *Buckhart v. San Francisco Residential Rent etc., Bd.* (1988) 197 Cal.App.3d 1032, 1036 [hearing on Code Civ. Proc., §1094.5 petition]; *Sui v. Landi* (1985) 163 Cal.App.3d 383, 385-386 [motion to dissolve preliminary injunction hearing]; *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 713-714 [demurrer hearing]; *Calhoun v. Hildebrandt* (1964) 230 Cal.App.2d 70, 71-73 [transcript of argument to the jury]; *Ehman v. Moore* (1963) 221 Cal.App.2d 460, 462 [failure to secure reporter's transcript [or] settled statement].)" (*Foust*, at pp. 186-187.)

The applicable California statutes similarly recognize the importance of a verbatim record of trial court proceedings as prepared by a court reporter. Under Code of Civil Procedure, section 269, subdivision (a)(1), an official court reporter or an official court reporter pro tempore of the superior court must be provided to make a verbatim record of all trial court proceedings "*[i]n a civil case*, on the order of the court or *at the request of a party*." (Italics added.)[12] On its face, this

---

[12] Code of Civil Procedure section 269, subdivision (a) provides in full: "An official court reporter or official court reporter pro tempore of the superior court shall take down in shorthand all testimony, objections made, rulings of the court, exceptions taken, arraignments, pleas, sentences, arguments of the attorneys to the jury, and statements and remarks made and oral instructions given by the judge or other judicial officer, in the following cases: [¶] (1) In a civil case, on the order of the court or at the request of a party. [¶] (2) In a felony case, on the order of the court or at the request of the prosecution, the defendant, or the attorney for the defendant. [¶] (3) In a misdemeanor or infraction case, on the order of the court."

19

statute contemplates that a court reporter will be present and will fully report all trial court proceedings in a civil case whenever a party so requests. Although section 269, subdivision (a)(1) does not preclude a court from requiring a party to pay for the services of an official court reporter when a party has the resources to do so, nothing in the statute suggests that a court reporter need not be provided to a litigant who cannot afford to pay for such services when the litigant has been granted a fee waiver because of his or her financial need.

### D. Reduction in Official Court Reporter Services in Response to Budget Cuts

Prior to the drastic cuts in judicial budgets over the last decade, superior courts in California generally made official court reporters routinely available for civil trials. As a result of budget reductions, however, many, but not all, of the superior courts throughout the state have adopted new policies limiting the availability of official court reporters to only a narrow category of civil cases, which generally do not include ordinary contract, personal injury, or professional negligence cases. (See 2017 Futures Com. Rep., *supra*, pp. 239-240; Impellizzeri, *BYO Court Reporter* (Sept. 2013) Cal. Lawyer at p. 6; Golay & Haskins, *The Necessity of Trial Transcripts in Appellate Proceedings* (Sept. 2015) Los Angeles Lawyer at p. 10; *Why You Need a Court Reporter to Set the Record Straight* (Sept. 3, 2014) at p. 1 [attaching chart listing then-current superior court policies regarding normal availability of official court reporters], available at <https://www.reedsmith.com/en/perspectives/2014/09/why-you-need-a-court-reporter-to-set-the-record-st> [as of July 5, 2018].)

The San Diego Superior Court policy at issue in this case is one of the recently adopted local court policies limiting the availability of official court reporters in civil cases. The policy currently provides in relevant part: "Official court reporters are normally available in felony criminal cases and juvenile matters

during regular court hours. *Official court reporters are not normally available in civil*, family, or probate *matters* with exceptions [relating to some specified family and probate matters]. . . . [¶] . . . [¶] Parties may privately arrange for the appointment of a court-approved official court reporter pro tempore without stipulation for civil, family, and probate matters. . . . [¶] Parties may privately arrange for the appointment of a reporter not on the court-approved list, by stipulation and order for civil, family, and probate matters. . . . [¶] *Parties, including those with fee waivers, are responsible for all fees and costs related to court reporter services arranged under the foregoing provisions.*" (S.D. Reporter Availability Policy, *supra*, at p. 1, italics added, boldface omitted.)[13]

The cost of a court reporter's attendance at trial court proceedings is significant. According to the San Diego Superior Court website, court reporter attendance fees for an official court reporter are currently $431 per half day and $862 per full day. (<http://www.sdcourt.ca.gov/portal/page?_pageid=55,1057199&_dad=portal&_schema=PORTAL> [as of July 5, 2018].) A 2012 article in a legal newspaper reported that at that time the per diem rate for private court reporters in San Francisco was $735 and in Los Angeles was $764. (McEvoy, *Shrinking Court Reporter Staffs Bring Changes to Litigation*, Daily J. (Mar. 15, 2012).)

In light of the significant costs of private court reporters, the practical effect of the foregoing policy means that in San Diego, and in other superior courts with

---

[13] The original version of the San Diego Superior Court Reporter Availability Policy providing that official court reporters are not normally available in civil matters was adopted in September 2012, effective November 1, 2012. Like the current policy, the original version explicitly provided that "[p]arties, including those with fee waivers, will be responsible for all fees and costs related to court reporter services . . . ." (<http://www.familylegalease.com/Documents%20of%20Interest/ADM317CourtReporterPolicy.pdf> [as of July 5, 2018].)

similar policies, indigent civil litigants are denied the ability to obtain a verbatim record of the trial court proceedings unless another party in the action who can afford to pay for a private court reporter chooses to arrange and pay for a private court reporter. The issue before us in this case is the validity of the San Diego policy as applied to a fee waiver recipient.

### E. The Parties' Contentions

Plaintiff, and the numerous amici curiae that have filed briefs on his behalf, maintain that the San Diego Superior Court policy is inconsistent with the prior California in forma pauperis decisions indicating that California courts should properly exercise the discretion they possess to ensure that litigants in California judicial proceedings are not denied equal access to justice, at trial or on appeal, on the basis of their limited financial resources. Defendant, by contrast, contends that the San Diego policy is valid, maintaining that the Court of Appeal properly found the policy compatible with the applicable statutes and rules of court. Defendant asserts that no case or statute requires a court to make an official court reporter available in every civil case in which a fee waiver recipient requests the services of an official court reporter, and that the fee waiver provision of section 68086(b) applies only when an official court reporter is provided by the court and when payment of a court reporter fee would otherwise be required. Further, defendant maintains that the superior court policy is a reasonable response to the significant reduction in its budget.

For the following reasons, we agree with plaintiff's position.

### F. Effect of Section 68086, Subdivision (d) and Rule 2.956

In addressing this issue in its decision below, the Court of Appeal recognized that to be valid a local court policy, like a local court rule, must be consistent with the federal and state Constitutions, statutes, rules of court, and

22

applicable case law.  (See Cal. Const., art. VI, § 6, subd. (d); *Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1351 (*Elkins*).)

In upholding the validity of the San Diego Superior Court policy, the Court of Appeal relied on the provisions of section 68086, subdivision (d) and rule 2.956.  Section 68086, subdivision (d) directs the Judicial Council to adopt rules to ensure that parties are given adequate and timely notice of the availability of an official court reporter, and further provides "[t]hat if an official court reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter, the costs therefor recoverable as [taxable costs by the prevailing party]."**14**  (*Id.*, subd. (d)(1).)

Rule 2.956 ― adopted by the Judicial Council in response to the directive in section 68086, subdivision (d) ― provides, in turn, that each trial court must adopt and post a local policy "enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official court reporters are not normally available during regular court hours.  If the services of official court reporters are normally available in a department only for certain types of matters, those matters must be identified in the policy."  (Rule 2.956(b)(1).)  Rule 2.956(c) further provides that '[i]f the services of an official court reporter are not available for a hearing or trial in a civil case, a party may arrange for the presence of a certified shorthand reporter to

---

**14**    Section 68086, subdivision (d) provides in full: "The Judicial Council shall adopt rules to ensure all of the following:  [¶]  (1) That parties are given adequate and timely notice of the availability of an official court reporter.  [¶]  (2) That if an official court reporter is not available, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter, the costs therefor recoverable [as taxable costs by the prevailing party].  [¶]  (3) That if the services of an official pro tempore reporter are utilized pursuant to paragraph (2), no other charge shall be made to the parties."

23

serve as an official pro tempore reporter.  It is that party's responsibility to pay the reporter's fee for attendance at the proceedings, but the expense may be recoverable as part of the costs, as provided by law."

Although both section 68086, subdivision (d) and rule 2.956 recognize that an official court reporter may not be available in all circumstances, neither section 68086, subdivision (d) nor rule 2.956 purports to address the subject of the proper treatment of fee waiver recipients.  Accordingly, the question arises whether either section 68086, subdivision (d) or rule 2.956, was intended and should properly be interpreted to authorize a trial court to adopt a policy that withholds the services of an official court reporter when one of the parties is a fee waiver recipient and when the practical effect of not providing an official court reporter is to deny the fee waiver recipient the opportunity to have the proceedings reported when a party who can pay for a private reporter is afforded that opportunity.  The Court of Appeal did not directly address this question.

In light of the legal analysis set forth in the seminal decision in *Martin*, *supra*, 176 Cal. 289, we conclude that neither section 68086, subdivision (d) nor rule 2.956 should properly be interpreted to authorize a court to withhold court reporter services from an in forma pauperis litigant when a litigant who can afford to pay for a private court reporter is permitted to obtain such services and have the private reporter serve as an official pro tempore court reporter for the proceedings.  As the court in *Martin* explained, "it is obvious that only the plainest declaration of legislative intent" should be construed as an effort by the Legislature to constrain the fundamental judicial policy of affording equal access to the judicial process to all persons without regard to their economic need.  (176 Cal. at p.  297.)  Because neither section 68086, subdivision (d) nor rule 2.956 contains any reference to fee waiver recipients, and in light of the strong legislative policy in support of equal access to justice set forth in section 68630, subdivision (a), we

24

conclude that neither provision supports the validity of the challenged local superior court policy as applied to a fee waiver recipient.

### G. Rule 3.55(7) as Amended in 2015 and Accompanying Advisory Committee Comment

Although neither section 68086, subdivision (d) nor rule 2.956 contains any reference to the provision of court reporter services to fee waiver recipients, a different California Rule of Court that was not cited or relied upon by the Court of Appeal, rule 3.55(7) as amended in 2015, and a 2015 Advisory Committee comment to that rule, contain language that, at least on their face, appear potentially relevant to the validity of the challenged policy. In light of that potential relevance, we requested the parties to submit supplemental briefing addressing the effect, if any, that either the rule or comment has on the issue before us in this case. Upon consideration of the supplemental briefing, we conclude that the 2015 amendment of rule 3.55(7) and the accompanying Advisory Committee comment should not properly be understood as addressing the issue before us.

We begin by describing the background to the 2015 amendment to rule 3.55(7).

As noted above, in 2013 the Legislature amended the provisions of section 68086, relating to the collection of court reporters' appearance fees. (Stats. 2013, ch. 454, § 1.) As part of the 2013 statute, a new subdivision (b) was added to 68086 to provide that a court reporter's appearance fee "shall be waived for a person who has been granted [an initial fee waiver]."

In 2014, on the recommendation of the Civil and Small Claims Advisory Committee of the Judicial Council (Advisory Committee), the Judicial Council circulated for comment a proposal to amend a variety of court rules and forms pertaining to fee waivers. (See Judicial Council of Cal., Invitation to Comment,

25

SPR14-05 (2014) Fee Waivers: Payments Over Time and Fees Included in Initial Fee Waiver.)  The proposed amendments upon which comments were solicited were unrelated to the provisions of section 68086(b) that had been enacted in 2013.  In response to the invitation to comment, however, a number of commentators pointed out that the court rules relating to fee waivers of court reporter appearance fees then in effect were inconsistent with the provisions of the recently enacted section 68086(b).**15**

In particular, at that time rule 3.55 provided in relevant part: "Court fees and costs that *must* be waived upon granting an application for an initial fee waiver include:  [¶]  . . .  [¶]  (7) Reporter's daily fees for attendance at hearings and trials *held within 60 days of the date of the order granting the application*." (Italics added.)  Further, rule 3.56 provided in relevant part that "[n]ecessary court fees and costs that *may* be waived upon granting an application for an initial fee waiver, either at the outset or upon later application, include:  [¶]   . . .  [¶] (4) Reporter's fees for attendance at hearing and trials *held more than 60 days after the date of the order granting the application*."  (Italics added.)  This is the same distinction, noted above, that the initial court rules relating to the waiver of

---

**15**      A summary of the comments that were submitted in response to the Judicial Council's invitation to comment is appended to the report the Advisory Committee subsequently submitted to the Judicial Council.  (See Judicial Council of Cal. Advisory Com., Rep. No. 14-05,  Fee Waivers: Change in Federal Poverty Guidelines, Revisions to Application Form, and Specific Fees Included in Waivers (2015) (Advisory Committee Report).)  The separate comments submitted by the Orange County Superior Court, the San Diego County Superior Court, and by a coalition of public interest law groups each pointed out the inconsistency of the existing court rules and section 68086(b), and a separate letter submitted by the coalition of public interest law groups proposed specific amendments to rules 3.55 and 3.56.

court reporter fees drew between proceedings held before and after 60 days of the granting of the initial fee waiver application. (See *ante*, p. 14.)

The comments submitted to the Advisory Committee pointed out that the newly enacted section 68086(b) draws no distinction in a fee waiver recipient's entitlement to the waiver of court reporter fees based on the date hearings or trials are held, but instead provides broadly and without qualification that the court reporter fee "shall be waived for a person who has been granted [an initial] fee waiver." The commentators suggested that the existing court rules be amended to be consistent with section 68086(b).

The Advisory Committee agreed with the commentators' suggestion in this regard. In its February 3, 2015 report to the Judicial Council recommending the amendment of various rules of court, including rules 3.55(7) and 3.56, the Advisory Committee explained that the preexisting provision of rule 3.55(7) "which currently includes on the list of fees that must be waived only those court reporters fees for hearing[s] held within 60 days of the issuance of the fee waiver order" needed to be modified "to eliminate the time restriction in light of the new mandate in Government Code section 68086(b) that all court reporter's fees otherwise charged by a court are waived for a party who has received a fee waiver." (Advisory Com. Rep., *supra*, at pp. 5-6.) The report further explained that for the same reason it recommended "that the item including reporter's fees for hearing[s] held more than 60 days after the issuance of the fee order be deleted from the list of fees the court has discretion to grant a waiver for in rule 3.56, since the waiver of such fees are no longer discretionary." (*Id*. at p. 6.)

In addition to simply eliminating the time restriction in rule 3.55(7) and deleting the provisions of former rule 3.56(4) (as one of the comments received by

the Advisory Committee had specifically proposed**16**), however, the Advisory Committee Report recommended two additional changes: (1) the addition of the phrase "if the reporter is provided by the court" to the end of rule 3.55(7), and (2) the addition of an Advisory Committee comment concerning rule 3.55. In this regard, the Advisory Committee Report recommended that rule 3.55(7) be amended to read: "Court fees and costs that must be waived upon granting an application for an initial fee waiver include: . . . (7) Reporter's fees for attendance at hearings and trials, *if the reporter is provided by the court*." (Advisory Com. Rep., *supra*, at p. 16, italics added.) And the report further recommended that the following Advisory Committee Comment be added regarding rule 3.55: "The inclusion of court reporter's fees in the fees waived upon granting an application for an initial fee waiver is not intended to mandate that a court reporter be provided for all fee waiver recipients. Rather, it is intended to include within a waiver all fees mandated under the Government Code for the cost of court reporting services provided by the court." (*Ibid.*) The report contained no explanation or citation of authority for these two proposed additions.

At the subsequent February 19, 2015 meeting of the Judicial Council, the Advisory Committee's recommendations with respect to the proposed amendments to a number of court rules and forms relating to fee waivers, which had been placed on the consent agenda, were adopted.

Although the 2015 amendment to rule 3.55(7) and the accompanying Advisory Committee comment are susceptible to differing interpretations, we conclude, for the reasons set forth in plaintiff's supplemental brief, that these changes should not properly be read as intended to address the question that is

---

**16** The letter submitted to the Advisory Committee by the coalition of public interest groups proposed only those amendments to rules 3.55 and 3.56.

28

before the court in this case — namely, whether a court policy that effectively denies court reporter services to a fee waiver recipient while at the same time permitting a financially able litigant to obtain the benefit of a court reporter is consistent with the general principles embodied in prior California in forma pauperis decisions. Instead, we conclude that the 2015 changes to rule 3.55(7) are properly read to indicate simply that the amended rule 3.55(7) should not, *in itself*, be understood as intended to place an obligation on a court to provide a court reporter for all fee waiver recipients.

As noted, rule 3.55(7), as amended in 2015, provides that the fees that must be waived upon granting an application for an initial fee waiver include "[r]eporter's fees for attendance at hearings and trials, if the reporter is provided by the court." By its terms, the rule says only that an initial fee waiver requires the waiver of reporter attendance fees "if the reporter is provided by the court." (*Ibid.*) The language of the rule does not purport to address whether, or under what circumstances, a trial court may be required, by judicial precedent or otherwise, to provide an official court reporter to prepare a verbatim record of the court proceedings.

Similarly, the Advisory Committee comment added to rule 3.55 in 2015 states simply that "the inclusion of court reporter's fees in the fees waived upon granting an application for an initial fee waiver is not intended to mandate that a court reporter be provided for all fee waiver recipients. Rather, it is intended to include within a waiver all fees mandated under the Government Code for the cost of court reporting services provided by a court." (Advisory Com. com., Cal Rules of Court, rule 3.55.) This comment can reasonably be interpreted to mean simply that the amended version of rule 3.55(7) is not itself intended to require that a court reporter be provided for all fee waiver recipients. The comment does not purport to address what the general principles embodied in prior California in

29

forma pauperis judicial decisions may require with respect to fee waiver recipients.

As plaintiff suggests, there are good reasons for not interpreting the two changes proposed by the Advisory Committee and adopted by the Judicial Council more broadly as addressing the issue posed in this case. As explained above, the 2015 amendments to rule 3.55(7) arose as a result of public comments received by the Advisory Committee in connection with an invitation for comment regarding proposed amendments to other rules that were entirely unrelated to the newly enacted section 86086(b). The comments relating to rule 3.55(7) that brought to the Advisory Committee's attention the existing rule's inconsistency with section 86086(b) did not propose the additional phrase at the end of rule 3.55(7) or the Advisory Committee comment that were subsequently proposed by the Advisory Committee in its report to the Judicial Council, nor did those comments discuss these subsequent additions. No further public comment was solicited by the Advisory Committee or the Judicial Council with regard to these two proposed changes before the changes were adopted by the Judicial Council.

The Judicial Council's rulemaking procedure permits the adoption of a new court rule or the amendment of an existing court rule without public comment in only limited circumstances. Under the governing rule, circulation for public comment is unnecessary only if "the proposal presents a nonsubstantive technical change or correction or a minor substantive change that is unlikely to create controversy . . . ." (Cal. Rules of Court, rule 10.22(d)(2); see *Siry Investments, L.P. v. Farkhondehpour* (2015) 238 Cal.App.4th 725, 731.) As plaintiff points out, if the 2015 amendment to rule 3.55(7) and the accompanying Advisory Committee comment were interpreted as intended to address the validity of the type of "no official court reporter" policy at issue in this case, the amendment could not properly be characterized as either a "nonsubstantive technical change"

30

or "a minor substantive change that is unlikely to create controversy." (Cal. Rules of Court, rule 10.22(d)(2).) Thus, those changes are appropriately construed to mean only that rule 3.55(7), as amended, should not itself be understood to mandate that a trial court provide an official court reporter for all fee waiver recipients, but not to speak to the broader issue of whether a general superior court policy, like the San Diego policy at issue here, is compatible with the general principles embodied in past California in forma pauperis decisions and the legislative policy embodied in Section 68630, subdivision (a).

Accordingly, we conclude that rule 3.55(7) as amended in 2015 and the accompanying Advisory Committee comment should not be interpreted as addressing the issue before us.

## H. Exercise of Superior Court's Discretion

In addition to relying upon section 68086, subdivision (d) and rule 2.956, defendant argues strenuously that the superior court, in adopting the policy at issue here, acted reasonably in the exercise of its discretionary quasi-legislative authority in light of its dire budgetary situation. We recognize and acknowledge the good faith of the superior court in attempting to deal with an extraordinarily difficult budgetary situation. The superior court could understandably conclude that its reduced resources required it to discontinue its policy of making official court reporters *generally* available in civil cases.[17]

---

[17] The 2017 Futures Commission Report discusses the substantial cost savings that could be obtained by the use of digital recording, in place of court-employed court reporters, to obtain a verbatim record of trial court proceedings. (2017 Futures Com. Rep., *supra*, at p. 247.) As already noted (*ante*, p. 2, fn. 2), however, legislative modification of the current statutory restriction on the courts' use of electronic recording in section 69957, subdivision (a) is required to permit realization of such savings.

31

However, the new policy failed to provide an exception for cases involving a fee waiver recipient who desires a verbatim record of the trial court proceedings but cannot afford to pay for a private reporter. Although such a limited exception would concededly impose some additional financial burden on the superior court,[18] our past decisions caution that a court's legitimate financial considerations must be carefully weighed against the potential impairment of a needy litigant's right to equal access to justice. (See, e.g., *Elkins*, *supra*, 41 Cal.4th at p. 1353 [noting that a "common theme" in cases invalidating local rules as inconsistent with the public's interest in equal access to justice "is that a local court has advanced the goals of efficiency and conservation of judicial resources" in

---

[18] We note that we have received and considered amici curiae briefs from several superior courts, describing the financial consequences they anticipate would result from a decision invalidating the San Diego Superior Court policy at issue as applied to fee waiver recipients.

At the same time, we observe that if a superior court were to provide an official court reporter in cases in which a fee waiver recipient requests such a reporter, the court would be permitted to impose a pro rata share of the costs of such an official court reporter on the parties in those cases who can afford to pay official court reporter fees, just as in other cases in which the court provides an official court reporter. (§ 68086, subd. (a)(2).) Under California Rules of Court, rule 2.958, the half-day fee to be charged under section 68086, on a pro rata basis, "is equal to *the average salary and benefit costs of the reporter, plus indirect costs of up to 18 percent of salary and benefits*." (Italics added.) Accordingly, the court could recover a significant portion of the additional cost of providing an official court reporter in cases involving fee waiver recipients from the parties in those cases who can afford the usual pro rata official court reporter fees.

Moreover, it is worth noting that the increased use of private court reporters in place of official court reporters will itself frequently entail additional administrative expense for a superior court. For example, a court may incur additional costs in attempting to locate and communicate with private court reporters when questions regarding such reporters' service arise subsequent to trial court proceedings. Communications with a court's own official court reporters often involve less time and expense.

adopting the challenged rule]; *Ferguson*, *supra*, 4 Cal.3d at p. 657 [noting that "the legitimate purpose[] of providing financial support for our courts" does not require "depriv[ing] indigents of access to the appellate courts"]; see also § 68630, subd. (b) ["The Legislature finds and declares . . . [¶] . . . [¶] . . . [t]hat fiscal responsibility should be tempered with concern for litigants' rights to access the justice system"].)  The question before us is whether the superior court in adopting the challenged court reporter policy properly exercised the discretion it possesses in a manner consistent with the principles underlying California's in forma pauperis doctrine and the legislative policy of equal access to the courts set forth in section 68630, subdivision (a).

In defending the absence of an exception for in forma pauperis litigants, defendant relies on the lack of any prior decision that supports the necessity of such an exception for official court reporters.  Although there is no prior case directly on point with regard to official court reporters, several prior cases that have arisen in other contexts support the conclusion that the San Diego Superior Court erred in adopting a policy that effectively denies in forma pauperis litigants the ability to obtain a verbatim record of the trial court proceedings while preserving that opportunity for litigants who can afford to pay for a private court reporter.

In *Solorzano*, *supra*, 18 Cal.App.4th 603, the question arose in the context of the procedure for resolving a discovery dispute.  Ordinarily, discovery disputes are resolved by the trial court, and a fee waiver recipient (like other parties) need not pay any fee to obtain such resolution.  Under section 639, subdivision (a)(5) of the Code of Civil Procedure, however, a trial court is permitted to appoint a referee to "hear and determine any and all discovery motions and disputes . . . and to report findings and make a recommendation thereon," and section 645.1, subdivision (b) of the Code of Civil Procedure, in turn, permits the court to "order

33

the parties to pay the fees of referees who are not employees or officers of the court . . . in any manner determined by the court to be fair and reasonable, including an apportionment of the fees among the parties." At the time of *Solorzano*, neither section 639 nor section 645.1 contained any provision relating to in forma pauperis litigants or other litigants with limited financial resources.

In the underlying pretrial proceedings in *Solorzano*, the trial court had appointed a privately compensated discovery referee and ordered the plaintiffs and the defendant to share equally in the payment of the referee's $300 per hour fee, despite the plaintiffs' objection that they were indigent and could not afford to pay that fee. The plaintiffs sought writ review in the Court of Appeal, and the appellate court, relying in part upon the line of California in forma pauperis precedents summarized above (see *Solorzano*, *supra*, 18 Cal.App.4th at p. 613, fn. 6), concluded that the trial court had erred in appointing a privately compensated referee.

Recognizing that a court does not have the authority to waive a privately compensated referee's fees, the Court of Appeal in *Solorzano* held that a trial court's discretion to appoint a privately compensated referee under sections 639 and 645.1 cannot be exercised in a manner that makes it unaffordable for an indigent party to litigate discovery disputes. The *Solorzano* court reasoned that because "no one can deny the indispensability of discovery in the prosecution of a lawsuit" (*Solorzano*, *supra*, 18 Cal.App.4th at p. 614), and because "indigent litigants proceeding in forma pauperis . . . are by definition unable to pay court-ordered reference fees" (*id.* at p. 615).), the trial court had abused its discretion in appointing a privately compensated discovery referee in that case. And speaking more generally, the court in *Solorzano* observed that "[r]eference to a discovery referee imposes a substantial economic burden on [a nonaffluent] party. It is therefore incumbent on trial courts utilizing the relief afforded by [sections 639

34

and 645.1] to look beyond the benefit realized by the judicial system and consider the economic impact the order of reference will have on the parties." (*Ibid.*) (See also *Taggares v. Superior Court* (1998) 62 Cal.App.4th 94, 106 ["Unless the court makes a cost-free option available to the parties, it may not order a [discovery] reference in [a case involving an indigent party]. Instead, the trial court should retain and resolve these matters . . . ."].)[19]

In *Roldan*, *supra*, 219 Cal.App.4th 87, a related question arose in the context of the enforcement of an arbitration provision contained in retainer agreements between the plaintiff clients and the defendant attorneys. Under the arbitration clause at issue and the applicable provisions of the California Arbitration Act (Code Civ. Proc., § 1284.2), each party to the arbitration agreement was required to pay a pro rata share of the arbitrator's fees and expenses as well as other arbitration expenses, all of which were likely to be substantial. The plaintiffs in *Roldan* were elderly individuals who had applied for and had been granted in forma pauperis status in the judicial proceeding. Thereafter, the plaintiffs challenged the trial court order compelling them to submit their dispute with their attorneys to arbitration, maintaining that they could not afford to pay the arbitration expenses.

---

[19]    In 2000, the Legislature amended Code of Civil Procedure section 639 to effectively codify the holding in *Solorzano*. (See Stats. 2000, ch. 644, § 2, p. 4198, adding Code Civ. Proc., § 639, subd. (b)(6)(A) ["All appointments of referees pursuant to this section shall be by written order and shall include the following: [¶] . . . [¶] Either a finding that no party has established an economic inability to pay a pro rata share of the referee's fee or a finding . . . that another party has agreed voluntarily to pay that additional share of the referee's fee. A court shall not appoint a referee at a cost to the parties if neither of these findings is made"].)

The Court of Appeal in *Roldan* first discussed several cases that had considered whether a provision of an arbitration agreement that required a party to pay arbitration fees that the party could not afford was unconscionable and unenforceable. (*Roldan*, *supra*, 219 Cal.App.4th at pp. 94-95 [describing *Gutierrez v. Autowest, Inc.* (2013) 114 Cal.App.4th 77 and *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554].) The appellate court in *Roldan* thereafter concluded that it need not reach the issue of whether the arbitration agreements at issue in that case were unenforceable, because the only issue before it was whether plaintiffs, who had been granted permission to proceed in forma pauperis, "could . . . be excused from the obligation to pay fees associated with arbitration." (*Roldan* at p. 95.) The court in *Roldan*, having taken note of "California's long-standing public policy of ensuring that all litigants have access to the justice system for resolution of their grievances, without regard to their financial means" (*id.* at p. 94, citing *Martin*, *supra*, 176 Cal. 289), concluded that the plaintiffs were entitled to relief.

The court in *Roldan* explained: "If, as plaintiffs contend, they lack the means to share the cost of the arbitration, to rule otherwise might effectively deprive them of access to any forum for resolution of their claims against [the defendants]. We will not do that. Of course, as the trial court recognized, we cannot order the arbitration forum to *waive its fees*, as a court would do in the case of an indigent litigant. Nor do we have authority to order [the defendant law firm] to pay plaintiffs' share of those fees. What we can do, however, is give [the defendant law firm] a choice: if the trial court determines that any of these plaintiffs is unable to share in the cost of arbitration, [the firm] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive its right to arbitrate that plaintiff's claim." (*Roldan*, *supra*, 219 Cal.App.4th at p. 96.)

36

The decisions in *Solorzano* and *Roldan* reveal a fundamental aspect of the California in forma pauperis doctrine that is directly relevant to the issue presented here. As these decisions demonstrate, under California law when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly private alternative procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status. In other words, whatever a court's authority may be in general to outsource to privately compensated individuals or entities part or all of the court's judicial duties with respect to litigants who can pay for such private services, a court may not engage in such outsourcing in the case of in forma pauperis litigants when the practical effect is to deprive such litigants of the equal access to justice that in forma pauperis status was intended to afford.

The superior court policy on court reporters challenged in this case exhibits the same fundamental problem that was addressed by the courts in *Solorzano* and *Roldan*. By eliminating the availability of official court reporters in most civil proceedings, the policy outsources the provision of court reporting services to privately compensated court reporters. And by failing to provide an exception for in forma pauperis litigants, the policy effectively deprives such litigants of equal access to the appellate process that their in forma pauperis status was intended to afford. As we have seen, the absence of a verbatim record of trial court proceedings will often have a devastating effect on a litigant's ability to have an appeal of a trial court judgment decided on the merits. (See *ante*, pp. 16-20.)[20]

---

[20] Defendant points out that the presence of a court reporter or a reporter's transcript is not always necessary to obtain resolution of an issue on appeal, because some issues can be resolved on the clerk's transcript alone or by way of a settled or agreed statement. There is, however, generally no way to determine in advance what issues may arise or whether such an issue can be raised and decided on appeal absent a verbatim record of the trial court proceedings. As a general

37

Without an exception for fee waiver recipients, the policy at issue here places indigent civil litigants at a significant disadvantage with respect to the right of appeal compared to those litigants who can afford to pay for a private shorthand reporter. (Accord, e.g., *Martin*, *supra*, 176 Cal. at p. 298 ["we will not say that a suitor who can pay court fees shall have his trial by jury and the suitor who cannot pay court fees must be content to go to trial without a jury"]; *Preston v. Municipal Court* (1961) 188 Cal.App.2d 76, 87-88 ["The right of appeal cannot lie in that discriminatory morass in which it is accessible to the rich and denied to the poor. Whatever hardship poverty may cause in the society generally, the judicial process must make itself available to the indigent"].)

Accordingly, we conclude that in order to satisfy the principles underlying California's in forma pauperis doctrine and embodied in the legislative public policy set forth in section 68630, subdivision (a), when a superior court adopts a general policy under which official court reporters are not made available in civil cases but parties who can afford to pay for a private court reporter are permitted to do so, the superior court must include in its policy an exception for fee waiver recipients that assures such litigants the availability of a verbatim record of the trial court proceedings, which under current statutes would require the presence of an official court reporter. Because the challenged San Diego Superior Court policy at issue here lacks such an exception, we conclude the policy is invalid as

---

matter, as discussed above, the absence of a court reporter will significantly limit the issues that must be resolved on the merits on appeal. Further, the court policy at issue permits a party that can afford the expense to obtain a verbatim record of the proceedings and does not require such a party to rely upon a settled or agreed statement. Thus, the potential availability of a settled or agreed statement does not eliminate the restriction of meaningful access caused by the policy upon fee waiver recipients.

applied to fee waiver recipients. Thus, the trial court erred in failing to make an official court reporter available to plaintiff upon request.

### III. WAS THE FAILURE TO PROVIDE AN OFFICIAL COURT REPORTER HARMLESS?

Defendant further argues that even if the superior court erred in failing to make an official court reporter available to plaintiff in this case, the error was harmless and the Court of Appeal judgment should be affirmed.

Defendant contends initially that even if an official court reporter had been present to report the trial court proceedings, because plaintiff could not afford to pay for a reporter's transcript for use on appeal the Court of Appeal decision would not have been different even if an official court reporter had been made available at trial.

Defendant points out that a number of California appellate court decisions have held that an in forma pauperis litigant is not entitled to obtain a free reporter's transcript in an ordinary civil action. (See, e.g., *City of Rohnert Park v. Superior Court* (1983) 146 Cal.App.3d 420, 426-430; *Leslie v. Roe* (1974) 41 Cal.App.3d 104, 107; *Rucker v. Superior Court* (1930) 104 Cal.App. 683, 685-685; cf. *Smith v. Superior Court* (1974) 41 Cal.App.3d 109, 111-114 [mother who was denied opportunity to withdraw consent to adoption statutorily entitled to reporter's transcript at county expense]; *Crespo v. Superior Court* (1974) 41 Cal.App.3d 115, 118-120 [in proceeding to terminate parental rights, parents statutorily entitled to reporter's transcript at county expense].) This court has not yet addressed the question under what circumstances an in forma pauperis civil litigant may be entitled to obtain a free reporter's transcript when such a transcript is essential to the resolution of the litigant's appeal on the merits. (See *Ferguson*, *supra*, 4 Cal.3d at p. 654.) Even assuming that under the in forma pauperis doctrine or constitutional principles there is no general right to a free reporter's

transcript in this type of case, we conclude that defendant's harmless error claim lacks merit for a number of reasons.

First, the California Legislature, by statute, has created a Transcript Reimbursement Fund to assist indigent civil litigants in paying for a reporter's transcript. (See Bus. & Prof. Code, §§ 8030.1-8030.9.) Although defendant notes that the amount that is available to an individual pro se litigant from this fund in a given case is quite limited,[21] because here the trial court granted nonsuit on the basis of plaintiff's opening statement, the transcript that would have been required would not have been extensive and the sum that the fund could potentially provide may well have been adequate. The absence of a court reporter at trial, however, meant that plaintiff could not obtain a reporter's transcript.

Second, even if plaintiff could not have obtained the needed sum for a transcript from the Transcript Reimbursement Fund, plaintiff might have been able to obtain representation on appeal from a nonprofit legal services provider or pro bono counsel (as he has before this court), and those entities might have been willing and able to advance the costs of obtaining a reporter's transcript, costs that would be recoverable from the opposing party if plaintiff were to prevail on appeal. In the absence of a court reporter at trial, of course, there are no reporter's notes to be transcribed.

Third, even if plaintiff were unable to obtain funds for a reporter's transcript, the existence of the notes of a court reporter who had reported the proceedings would be useful and valuable in enabling plaintiff to obtain an adequate settled or agreed statement to be utilized on appeal. (See, e.g., *Western States Const. Co. v. Municipal Court* (1951) 38 Cal.2d 146, 149; *Mooney v.*

---

[21] Under Business and Professions Code section 8030.6, subdivision (e), an individual pro se litigant may receive no more from the fund than $1,500 per case.

40

*Superior Court* (2016) 245 Cal.App.4th 523, 532; *In re Armstrong* (1981) 126 Cal.App.3d 565, 573; *Herick v. Municipal Court* (1970) 8 Cal.App.3d 967, 974; *Eisenberg v. Superior Court* (1956) 142 Cal.App.2d 12, 19-20.) Because no reporter was present, there are no reporter's notes that could be consulted for that purpose.

Alternatively, defendant contends that any error with regard to the failure to provide a court reporter was harmless "because the record shows that . . . plaintiff did not have an expert to testify at trial." Defendant maintains that plaintiff was required to present testimony through his own expert witness at trial in order to show the requisite causation between defendant's alleged malpractice and plaintiff's injuries. Plaintiff asserted on appeal, however, that because he could not afford to pay for his expert witness's appearance at trial, the trial court had erroneously precluded him from utilizing a variety of alternative means to establish causation, including relying upon his own expert's declaration and deposition, relying upon testimony by defendant's expert, and relying upon the res ipsa loquitur doctrine. The Court of Appeal rejected all of those contentions without reaching the merits, on the ground that they were not "cognizable in the absence of a reporter's transcript," and without a record of plaintiff's opening statement we cannot determine whether the trial court's grant of a nonsuit at this early stage of the trial was substantively proper.

Accordingly, we conclude that the absence of an official court reporter to prepare a verbatim record of the trial court proceedings cannot be found harmless.

## IV. CONCLUSION

For the reasons discussed above, the judgment of the Court of Appeal is reversed insofar as it affirmed the trial court judgment in favor of defendant on the basis of the trial court's grant of a nonsuit related to plaintiff's opening statement. As noted above (*ante*, p. 7), in view of its conclusion regarding the trial court's grant of a nonsuit, the Court of Appeal did not address the validity of the trial court's alternative basis for entering judgment in favor of defendant, namely that plaintiff's action was barred under Code of Civil Procedure section 583.310 for failing to bring the matter to trial within five years. Accordingly, the matter is remanded to the Court of Appeal for resolution of the latter issue.

**CANTIL-SAKAUYE, C. J.**

**WE CONCUR:**

**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**
**DONDERO, J.***

* Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to Article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Jameson v. Desta

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 241 Cal.App.4th 491
**Rehearing Granted**

_____

**Opinion No.** S230899
**Date Filed:** July 5, 2018

_____

**Court:** Superior
**County:** San Diego
**Judge:** Joel M. Pressman

_____

**Counsel:**

Barry S. Jameson, in pro. per.; Kirkland & Ellis, Michael J. Shipley, Sierra Elizabeth and Joseph M. Sanderson for Plaintiff and Appellant.

Jon B. Eisenberg, Margaret A. Grignon, Robin Meadow, Robert S. Gerstein, Dennis A. Fischer, Robin B. Johansen, Laurie J. Hepler, Michael G. Colantuono, Orly Degani; Caldwell Leslie & Proctor, Albert Giang; Gibson, Dunn & Crutcher, Michele L. Maryott, Blaine H. Evanson and Carolyn S. Small for California Academy of Appellate Lawyers, Beverly Hills Bar Association, Inner City Law Center, Legal Aid Association of California, Legal Aid Foundation of Los Angeles, Los Angeles Center for Law and Justice, Los Angeles County Bar Association, Public Counsel, Neighborhood Legal Services of Los Angeles County, Prof. Erwin Chemerinsky, Prof. David Marcus, Prof. Judith Resnik, Prof. Louis S. Rulli and Western Center on Law and Poverty as Amici Curiae on behalf of Plaintiff and Appellant.

Erin C. Smith, Nancy K. D. Lemon; Morrison & Foerster, Penelope A. Preovolos and Anna T. Ferrari for Family Violence Appellate Project and 30 organizations and individuals representing survivors of family violence as Amici Curiae on behalf of Plaintiff and Appellant.

Paulette Brown; Haynes and Boone, Mary-Christine Sungaila and Martin M. Ellison for American Bar Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Michael J. Levy and Catherine Blakemore for Amicus Curiae Committee of the California Commission on Access to Justice as Amicus Curiae on behalf of Plaintiff and Appellant.

Cole Pedroza, Kenneth R. Pedroza, Joshua C. Traver, Cassidy C. Davenport; La Follette, Johnson, DeHaas, Fesler & Ames, James J. Wallace II, Russell M. Mortyn and David J. Ozeran for Defendant and Respondent.

Frederick R. Bennett for Superior Court, County of Los Angeles as Amicus Curiae.

Jeffrey Wertheimer for Superior Court, County of Orange as Amicus Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael J. Shipley
Kirkland & Ellis
333 South Hope Street, 29th Floor
Los Angeles, CA  90071
(213) 680-8400

Kenneth R. Pedroza
Cole Pedroza
2670 Mission Street, Suite 200
San Marino, CA  91108
(626) 431-2787